IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOCELYN NANETTE KNOTTS, INDIVIDUALLY, AND AS REPRESENTATIVE OF THE ESTATE OF KENNETH WAYNE KNOTTS, DECEASED, AND KENITH PRICE, LADONNA BLANCHARD, INDIVIDUALLY AND AS NEXT FRIEND OF K.W.K AND L.U.K., MINOR CHILDREN<br>        Plaintiffs,<br><br>V.<br><br>THE UNIVERSITY OF TEXAS SYSTEM AND JOHN DOES # 1-10<br><br>        Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ CIVIL ACTION NO. 3:23-cv-02369<br>§<br>§<br>§<br>§<br>§<br>§ |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

**NOW COME** PLAINTIFFS, JOCELYN NANETTE KNOTTS, Individually, and as Representative of the ESTATE OF KENNETH KNOTTS, DECEASED, KENITH PRICE, and LADONNA BLANCHARD, INDIVIDUALLY AS NEXT FRIEND OF K.W.K AND L.U.K, MINOR CHILDREN, complaining of THE UNIVERSITY OF TEXAS SYSTEM (UT SYSTEM) and JOHN DOES # 1-10 respectfully show the Court as follows.

### PARTIES AND SERVICE

1.      Plaintiff JOCELYN NANETTE KNOTTS is a citizen of the United States, the State of Texas, and a resident of Travis County, Texas.

2.      Plaintiff KENITH PRICE is a citizen of the United States, the State of Texas, and a resident of Travis County, Texas.

3. Plaintiff LADONNA BLANCHARD is a citizen of the United States, the State of Texas, and a resident of Travis County, Texas.

4. Plaintiffs K.W.K and L.U.K., are the minor children of the Decedent and are citizens of the United States, the State of Texas, and are residents of Travis County, Texas.

5. Defendant THE UNIVERSITY OF TEXAS SYSTEM (UT SYSTEM) is a state university system that may be served with process by serving its Chancellor, James B. Milliken, at 210 W. 7th Street, Austin, Texas 78701.

6. Defendants John Does #1-10 are unidentified officers of the University of Texas System. Service is not requested at this time. When requested, said Defendants may be served with personal process at his/her/their places of employment located at UT Southwestern Police Department, 6010 Forest Park, Suite 100, Dallas, Texas 75235.

## JURISDICTION

7. The action arises under the Fourth and Fourteenth Amendments to the United States Constitution, and Title 42 U.S.C. §§ 1983 and 1988.

8. This Court has jurisdiction over these claims pursuant to Title 28 U.S.C. §§ 1331 and 1343.

9. This Court also has supplemental jurisdiction of the State law claims alleged in this petition pursuant to Title 28 U.S.C. § 1367.

## VENUE

10. Venue is proper pursuant to Title 28 U.S.C. §1391(b)(1) in that the Defendants resides in Dallas, and the cause of action arises in the Northern District of Texas, Dallas Division.

## CONDITIONS PRECEDENT

11. All conditions precedent have been performed or have occurred.

## FACTS

## UTSWPD SUBDUED KENNETH KNOTTS

12. On November 29, 2022, Kenneth Knotts was traveling through the Metroplex from the Austin area with two of his children. Close to 8:00 a.m., he had a flat tire and was confronted by officers from the City of Hutchins, who determined that he had some kind of mental crisis, took him into custody, and then transported him to the University of Texas Southwestern Medical Hospital (hereafter "UTSW") for mental health treatment.

13. Near 11:00 a.m., Officers from the UTSW Police Department, (hereafter "UTSWPD") responded to some kind of disturbance. Responding officers assert that they attempted to manage the disturbance by employing de-escalation tactics with Knotts, who was in a room with the officers. The officers unsuccessfully deployed an electrical conduction weapon, known commonly as a TASER.

14. Near 11:43 a.m., UTSWPD asserted that Kenneth Knotts fled from officers from the hospital room and traveled approximately 500 yards off the UTSW campus to a nearby commercial area.

15. UTSWPD has refused to release evidence of Knotts's death—including the body-worn camera footage that would capture the details of his restraint. That said, the evidence to date shows that by UTSWPD's own account, Knotts was handcuffed and restrained for between eight and thirty-four minutes before he reportedly became unresponsive at 12:20 p.m. The Body Worn Camera ("BWC") footage, which has remained hidden from the public and the Knotts family since Kenneth's death, has proved probative to the cause of death.

16. Kenneth was taken back to the hospital at or near where he was declared dead at approximately 1:02 p.m.

## MEDICAL EXAMINER HELD OFFICER(S) KILLED KENNETH

17. Following Kenneth's death, the Dallas County Medical Examiner, Dr. Travis Danielsen, autopsied the body and concluded the following:

> Based on the case history, autopsy findings, and review of law enforcement body-worn camera footage, it is my opinion that Kenneth Knotts, a 41-year-old Black male, died as a result of sudden cardiac arrest cause associated with physical restraint and semi-prone position.

18. The Dallas County Medical examiner further concluded the manner of death was a "Homicide."

19. In his autopsy report, Dr. Danielsen made a number of observations and conclusions.

20. Dr. Danielsen further reported finding a "3 x 2 inch contusion" on the "lateral right side of the upper chest" of Kenneth's body. The medical examiner further noted "two ¼ inch abrasions on the mid back.

21. Dr. Danielsen determined that Kenneth's heart weighed 410 grams.

22. Dr. Danielsen further concluded that Kenneth had mild atherosclerosis of his heart.

23. The medical examiner further determined that the aorta and the great veins were normally distributed.

24. He further determined that there were no obstructions in the pulmonary arteries or any in the atria or ventricles.

25. Dr. Danielsen further determined that the Decedent's pericardium, epicardium, and endocardium were **unremarkable**.

26. He further determined that the heart valves were **unremarkable** and that there were **no abnormalities** in the myocardium.

27. However, the medical examiner's examination of the lungs indicated that the Decedent had **congested parenchyma (consistent with asphyxia)**.

### DANGERS OF HAZARDS OF PRONE RESTRAINT HAVE BEEN WELL-KNOWN BY LAW ENFORCEMENT FOR DECADES

28. The hazards of prone restraint are well-established within cardiopulmonary medical literature. *See, e.g.,* ("Thoracic weighting of restrained subjects during exhaustion recovery causes loss of lung reserve volume in a model of police arrest" by Campbell et al; Scientific Reports |(2021). Stated another way, even without the BWC footage, it is statistically improbable that anything other than custodial prone restraint killed Knotts.

29. The hazards of restraint asphyxia have been widely known within the law enforcement community for several decades. In 1995, the Department of Justice issued a national bulletin declaring that prone restraint causes positional asphyxia. Those findings were made as a result of retired Dr. Charles Petty, the Chief Medical Examiner for Dallas County and Professor of Pathology for UT Southwestern.

30. It is well-established that restraint resulting in impaired breathing can result in death in four minutes, even according to experts who routinely testify on behalf of law enforcement. Notwithstanding these facts, police departments continue to fail to give <u>consistent</u> <u>reinforcement</u> of sound protocols following the DOJ and organizations like the International Association of the Chiefs of Police.

31. Within the 5th Circuit, it has been clearly established law since at least the 1990's of the dangers of prone restraint and the Fourth Amendment violations it causes, *See Gutierrez v. City of San Antonio,* 139 F.3d 441, 447-49 (5th Cir. 1998). The Fifth Circuit further clarified this ruling in December 2021, further holding that an officer violates a subject's Fourth Amendment

rights by placing weight on the back of a handcuffed subject. See *Timpa v. Dillard*, 20 F.4th 1020 (5th Cir. 2021).

32. In *Timpa,* the Fifth Circuit further established that such restraint is deadly force.

33. Deadly force is not authorized against any subject who does not threaten officers or others with death or serious bodily injury.

34. In the present instance, officers knew that Knotts was unarmed and they knew that Knotts was handcuffed.

## CAUSES OF ACTION

## VIOLATION OF CONSTITUTIONAL RIGHTS

35. The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

36. Defendants John Does # 1-10 willfully and maliciously used excessive force to restrain Kenneth Knotts despite having no legitimate reason for doing so.

37. The force used by Defendants John Does # 1-10 was recklessly excessive and killed Kenneth Knotts.

38. UTSW's established policies and customs, such as its failure to supervise and train its officers in the use of life-preserving techniques along with its failure to adequately discipline officers when engaging in the use of prone restraint, were the moving force behind the Decedent's death. The policies and customs outlined were the result of decisions made by either the UT System Board of Regents, and/or those commissioned by the Board of Regents, or otherwise provided power by delegation.

39. Each of the policies delineated above was actually known, constructively known, and/or ratified by the UT System, and its policymakers; delegated to chief of police and his designees. These policies, or lack thereof, and customs, whether written or unwritten, were promulgated with deliberate indifference to Decedent's rights under the United States Constitution.

40. Moreover, the known and obvious consequence of these policies was that UTSW police officers would be placed in recurring situations in which the constitutional violations described within this complaint would result. Accordingly, these policies also made it highly predictable that the particular violations alleged here, all of which were under color of law, would result.

41. Consequently, the policies delineated above were a moving force behind the violation of Decedent's constitutional rights and the cause of his injuries and death.

42. The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim. Defendants John Doe # 1, 2 and/or 3 exercise of these established policies and customs violated the Kenneth's clearly established right under the United States Constitution to:

    a. freedom from unreasonable seizure of their person;

    b. freedom from the use of unreasonable, unnecessary, and excessive force.

    c. Defendants John Does # 1, 2 and/or 3 acted willfully, deliberately, maliciously, or with reckless disregard for Kenneth' constitutional rights.

    d. The above-described actions subjected Decedent to a deprivation of rights and privileges secured to plaintiff by the Constitution and laws of the United States,

including the due process clause of the Fourteenth Amendment to the Constitution of the United States, within the meaning of 42 U.S.C. § 1983.

## WRONGFUL DEATH

43.     The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim. As the surviving parents of Decedent, Plaintiffs Jocelyn Knotts and Kenith Price, and as the surviving children of Decedent, K.W.K. and L.U.K., minors, have an action for wrongful death based on the facts stated in Tex. Civ. Prac. & Rem. Code §§ 71.001-71.012.

## SURVIVAL ACTION

44.     The factual allegations contained in the preceding paragraphs are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim. Had Kenneth survived, he would have been entitled to bring actions for violations of his constitutional rights and for deprivations of his Fourth Amendment rights. As a representative of his Estate, Plaintiffs have a cause of action for personal injuries suffered by Kenneth Knotts, including to his health, dignity, and reputation before his death. Tex. Civ. Prac. & Rem. Code § 71.021. Decedent died intestate. No administration is presently pending and none is necessary.

## **DAMAGES**

45.     Plaintiffs sustained actual and consequential damages as a direct result of the actions and/or omissions of the Defendants described hereinabove.

46.     As a direct and proximate result of Defendants' acts and omissions as heretofore alleged, Kenneth suffered physical impairment, excruciating pain, mental anguish, medical treatments, and death. The Estate is, therefore, entitled to recover all reasonable and necessary

medical and funeral expenses incurred for the care, treatment, and burial of Kenneth Knotts that resulted from the tortious acts of the Defendants. In addition, the Estate of Kenneth Knotts has an action for the injuries suffered, including but not limited to the disfigurement, humiliation, past pain and suffering, mental anguish, and physical capacity suffered because of the incident.

47. Plaintiffs Jocelyn Knotts and Kenith Price, as parents of the Decedent, Ladonna Blanchard, as the other parent of the decedent's minor children, and K.W.K and L.U.K., as the Decedent's minor children have all suffered non-pecuniary wrongful death damages, including, but not necessarily limited to, their mental anguish, loss of companionship and society.

48. Specifically, Decedent's minor children, K.W.K and L.U.K., have suffered wrongful death damages for their individual pecuniary loss, loss of inheritance, loss of maintenance, and loss of the parent-child relationship. Such damages include but are not limited to past and future lost earnings, past and future mental anguish damages, and other actual damages that are determined under trial of the merits.

49. Plaintiff Ladonna Blanchard, as the other parent of the Decedent's minor children, has suffered pecuniary wrongful death damages for the Decedent's loss of future earnings and other actual damages that are determined under the trial on the merits.

50. In addition, the foregoing acts were committed with the kind of willfulness, wantonness, fraud, and/or malice for which the law allows the imposition of punitive damages against said Defendants. Plaintiffs are, therefore, entitled to exemplary damages in an amount exceeding the minimum jurisdictional limits of this Court.

## ATTORNEY'S FEES

51. Plaintiffs are further entitled to receive their reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

52. Plaintiffs are further entitled to receive pre-judgment and post-judgment interest at the highest interest rate allowable by law.

## JURY DEMAND

53. Plaintiffs demand a jury trial.

## PRAYER

Plaintiffs respectfully pray that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiffs against the Defendants for damages in an amount within the jurisdictional limits of the Court; exemplary damages, attorneys' fees, together with pre- and post- judgment interest as allowed by law, costs of court, and such other further relief to which the Plaintiffs may be entitle at law or in equity.

Respectfully Submitted,

By: /s/ *Geoff J. Henley*
Geoff J. Henley
Texas Bar No. 00798253
ghenley@henleylawpc.com
Rossina Ortega
Texas Bar No. 24125048
rortega@henleylawpc.com
Will Smith
Texas Bar No. 24110380
wsmith@henleylawpc.com

**HENLEY & HENLEY, P.C.**
2520 Fairmount, Suite 200
Dallas, Texas 75201
Tel. (214) 821-0222
Fax. (214) 821-0124

**ATTORNEYS FOR PLAINTIFFS**